UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
COREY FRIEDMAN,

                        Plaintiff,

        -against-                          MEMORANDUM AND ORDER
                                           08-CV-2801 (JS) (WDW)
MARK SCHWARTZ,

                        Defendant.
----------------------------------X
APPEARANCES:
For Plaintiff:      Kenneth A. Elan, Esq.
                    217 Broadway, Suite 606
                    New York, NY 10007

For Defendant:      Mark Schwartz, Pro se
                    800 Ocean Drive, #201
                    Juno Beach, FL 33408

SEYBERT, District Judge:

        Plaintiff Corey Friedman ("Plaintiff") commenced this
action seeking to recover the principal sum of one hundred thousand
dollars ($100,000.00), plus interest he allegedly loaned to
Defendant Mark Schwartz ("Defendant"). Presently before the Court
is Defendant's motion to dismiss. Defendant fails to state the
Rule numbers corresponding to his grounds for his motion to
dismiss. Nevertheless, the Court liberally construes the papers of
a pro se litigant, and finds his motion to be adequately pled.
Defendant is seeking dismissal pursuant to Federal Rules of Civil
Procedure 12(b)(2) (lack of personal jurisdiction), 12(b)(3)
(improper venue), 12(b)(6) (failure to state a claim upon which
relief can be granted), the doctrine of forum non conveniens, and
the Statute of Frauds. In the alternative, Defendant seeks to

transfer venue pursuant to 28 U.S.C. § 1404(a).

For the reasons discussed below, Defendant's motion to dismiss is DENIED and his motion to transfer venue is DENIED.

BACKGROUND

From the documents available to this Court, it appears that Plaintiff first filed suit against the Defendant on July 16, 2007. See Friedman v. Schwartz, No. 07-CV-2884 (E.D.N.Y. May 30, 2008). Based on the docket in that case, it is clear that Plaintiff voluntarily dismissed the action because he failed to properly serve the Defendant. Here, Defendant states in his motion to dismiss that he was improperly served again, but he waives his objections to improper service. Therefore, the service of process requirements are deemed satisfied.

This case arises out of an alleged breach of contract. Plaintiff is seeking to recover $100,000.00, plus interest, representing money he loaned to Defendant on October 1, 2003. According to the Complaint and the papers filed by Plaintiff in connection with the instant motion, Plaintiff met Defendant in the summer of 2003 in New York City when Defendant was in the process of producing a show called "Harmony." After spending several evenings with the Defendant, Plaintiff was persuaded to become an investor in the production. After making an initial investment in the production, Plaintiff was solicited by Defendant to invest additional monies during meetings held in New York City and

Plaintiff's residence in Sands Point, New York. Defendant allegedly represented that he would give Plaintiff a lien on his condominium in Florida as security for the loan. Eventually, Plaintiff agreed to loan Defendant personally $100,000.00 with interest at the rate of ten percent and payable on demand (the "Contract"). Accordingly, Plaintiff wired the funds to Defendant at a bank account maintained by Defendant for the show at JP Morgan Chase, located at 3 Times Square, New York, New York. The letter of authorization indicates that Defendant maintained an office for the show at 254 West 44th Street, New York, New York, but Defendant disputes this fact.

Despite completing the wire, Plaintiff never received documentation memorializing the agreement with Defendant. After wiring the money, however, there were some contacts between the Plaintiff and Defendant, though it is unclear who initiated the contacts on all occasions. Plaintiff alleges that at least on one occasion he spoke to Defendant on the phone regarding the Contract. In addition, Plaintiff alleges, and Defendant admits, that the parties exchanged e-mails on several occasions and discussed the debt repayment.

In response to Plaintiff's allegations, Defendant first asserts that Plaintiff loaned the funds to Harmony on Broadway, LLC ("Harmony, LLC") and not to him personally. He contends he was simply an officer of that entity and authorized to act on its

behalf; thus, he cannot be held liable for debts of the institution. Defendant also moves for dismissal on the grounds below.

DISCUSSION

I.  <u>Motion to Dismiss for Lack of Personal Jurisdiction:
    Rule 12(b)(2)</u>

    A.  <u>Rule 12(b)(2) Standard</u>

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." <u>Metro. Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 566 (2d Cir. 1996). "Unlike a motion to dismiss pursuant to Rule 12(b)(6), deciding a Rule 12(b)(2) motion necessarily requires resolution of factual matters outside the pleadings." <u>ADP Investor Commun. Servs. v. In House Atty. Servs.</u>, 390 F. Supp. 2d 212, 217 (E.D.N.Y. 2005). Where, as here, a defendant's 12(b)(2) motion is "made before any discovery, [a plaintiff] need only allege facts constituting a prima facie showing of personal jurisdiction." <u>PDK Labs, Inc. v. Friedlander</u>, 103 F.3d 1105, 1108 (2d Cir. 1997); <u>see also</u> <u>Marine Midland Bank, N.A. v. Miller</u>, 664 F.2d 899, 904 (2d Cir. 1981). In opposing a Rule 12(b)(2) motion prior to discovery, "[w]here a court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting

4

materials." <u>Grand River Enters. Six Nations, Ltd. v. Pryor</u>, 425 F.3d 158, 165 (2d Cir. 2005) (internal quotations marks and citations omitted) (alteration in original). Furthermore, "[w]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." <u>Wickers Sportswear, Inc. v. Gentry Mills, Inc.</u>, 411 F. Supp. 2d 202, 205-206 (E.D.N.Y. 2006) (quoting <u>Whitaker v. American Telecasting, Inc.</u>, 261 F.3d 196, 208 (2d Cir. 2001)).

To decide "a question of personal jurisdiction, district courts must conduct a two-part analysis, looking first to the state's long-arm statute and then analyzing whether jurisdiction comports with federal due process." <u>Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.</u>, 264 F.3d 32, 37 (2d Cir. 2001). The two part analysis is sequential; if the district court finds no basis for long arm jurisdiction, it need not engage in a federal due process analysis. <u>Bensusan Rest. Corp. v. King</u>, 126 F.3d 25, 27 (2d Cir. 1997).

A party may be subject to either general or specific jurisdiction in New York. General jurisdiction exists if the defendant's contacts with New York are so substantial that personal jurisdiction exists over any dispute. <u>See</u> <u>Nautilus Ins. Co. v. Adventure Outdoors, Inc.</u>, No. 06-CV-3350, 2007 U.S. Dist. LEXIS 94478, at *6-7 (E.D.N.Y. Dec. 27, 2007) ("For general jurisdiction,

i.e., exercise of jurisdiction over any dispute involving the party, plaintiff's cause of action need not arise out of defendant's contacts with the forum state – rather, the defendant's contacts with the state must be substantial."). In addition, New York courts can obtain general personal jurisdiction over a natural person if the party (1) is domiciled in New York, (2) consents to personal jurisdiction, or (3) is served while he is present in New York state.

In the alternative, a party may be subject to personal jurisdiction of New York courts through specific personal jurisdiction if the party's interaction with the state satisfies any one of the tests outlined in New York's long-arm statute. The statute grants personal jurisdiction over a non-domiciliary if that party: (1) transacts business within the state or contracts to supply goods or services in the state, (2) commits a tortious act, other than defamation, within the state, (3) commits a tortious act outside the state causing injury to a person or property within the state, if the defendant (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) owns, uses, or possesses real property in New York. See N.Y. C.P.L.R.

§ 302(a).

B.    Rule 12(b)(2) Application

Here, Plaintiff fails to allege sufficient facts to establish general jurisdiction over the Defendant. Defendant was not served with process while in New York, does not consent to this Court's personal jurisdiction, and is not domiciled within the state. Morever, Plaintiff fails to allege sufficient facts demonstrating that Defendant has such substantial contacts, that should be subjected to general personal jurisdiction. Nevertheless, this Court may still exercise specific personal jurisdiction if Plaintiff has sufficiently pled facts to establish the requirements of N.Y. C.P.L.R. § 302(a). Of the four methods of obtaining long-arm jurisdiction, Defendant's actions might be classified as "transacting business" under § 302(a)(1).[1]

The "transacting business" test under C.P.L.R. § 302(a)(1) requires the purposeful availment of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws, not regular and systematic activities like the "doing business" standard required for general jurisdiction. See Palace Exploration Co. v. Petroleum Dev. Co., 41 F. Supp. 2d 427, 432 (S.D.N.Y. 1998) (citing CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 364 (2d Cir. 1986); see Wilhelmshaven

_____

[1] Although the Court can foresee a situation where conduct similar to Defendant's might be characterized as fraud, in this case the Plaintiff does not allege fraud.

Acquisition Corp. v. Asher, 810 F. Supp. 108, 111-12 (S.D.N.Y.
1993); PaineWebber, Inc. v. Westgate Group, Inc., 748 F. Supp. 115,
118 (S.D.N.Y. 1990).  In other words, § 302(a)(1) requires "a
certain quality, rather than a specific quantity, of contacts with
the forum.  U.S. Theatre Corp. v. Gunwyn/Lansburgh Ltd. P'ship, 825
F. Supp. 594, 595 (S.D.N.Y. 1993).  In determining whether the
contacts are of the appropriate nature, the court must look to the
totality of the circumstances.  See Palace Exploration, 41 F. Supp.
2d at 432 (citing Sterling Nat'l Bank v. Fidelity Mortgage
Investors, 510 F.2d 870, 873 (2d Cir. 1975) and Pilates, Inc. v.
Pilates Inst., Inc., 891 F. Supp. 175, 178 (S.D.N.Y. 1995)).  Some
of the factors to be considered by the Court include:

> (i) whether the defendant has an on-going
> contractual relationship with a New York
> corporation; (ii) whether the contract was
> negotiated or executed in New York and
> whether, after executing a contract with a New
> York business, the defendant has visited New
> York for the purpose of meeting with parties
> to the contract regarding the
> relationship . . . .

Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22-23 (2d Cir. 2004)

(quoting Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98

F.3d 25, 29 (2d Cir. 1996) (internal citations omitted)).

    In this case, Defendant's visit(s)[2] to New York, during

_____

    [2] From Plaintiff's motion papers and Complaint, it is
impossible to tell how many times Defendant visited New York.  It
is apparent, however, that Plaintiff and Defendant met on more
than one occasion to discuss the loan; they met in New York City
on at least one occasion and in Port Washington, N.Y. on at least

which he negotiated the contract, weigh heavily on the Court's analysis. As a general matter, visits to the forum can be of variable significance for purposes of determining personal jurisdiction. While, a visit to the forum is a presumptively more significant contact than a phone call[3] or a letter, it too must be "purposeful" in order to sustain jurisdiction. _See_ _U.S. Theatre Corp. v. Gunwyn/Lansburgh Ltd. P'ship_, 825 F. Supp. 594, 596 (S.D.N.Y. 1993). "When a non-resident defendant's visit to the forum allows him to purposefully avail himself of the benefits and protection of the forum's laws, one visit can be enough to sustain jurisdiction." _Id._ (citing _George Reiner & Co., Inc. v. Schwartz_, 363 N.E.2d 551, 552, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 846 (1977) (one visit in which an employment agreement was made satisfied the requirements of the statute) and _Hi Fashion Wigs, Inc. v. Peter Hammond Adver., Inc._, 300 N.E.2d 421, 422, 32 N.Y.2d 583, 347 N.Y.S.2d 47, 49 (1973) (defendant's single visit to personally guarantee a contract was enough to sustain jurisdiction)). On the other hand, when the visit is not for the purpose of initiating or

---

one occasion. Whether these meetings happened during one, extended trip by Defendant or over multiple trips, is unclear.

[3] It is well-settled that, generally by themselves, telephone and mail contacts do not constitute "transacting business" under the § 302(a)(1). _See_ _Fiedler v. First City Nat'l Bank_, 807 F.2d 315, 317 (2d. Cir. 1986); _PaineWebber_, 748 F. Supp. at 119. _See_ _also_ _Lawrence Wisser & Co. v. Slender You, Inc._, 695 F. Supp. 1560, 1562 (S.D.N.Y. 1988) (80 phone calls and 30 faxes did not warrant jurisdiction). However, these contacts can properly be considered as part of the Court's analysis.

forming a relationship, but to alleviate problems under a pre-existing relationship, New York courts have declined to assert jurisdiction. See id. (citing, inter alia, McKee Elec. Co. v. Rauland-Borg Corp., 229 N.E.2d 604, 606, 20 N.Y.2d 377, 283 N.Y.S.2d 34, 36 (1967) (a few visits to New York by agent of defendant to discuss problems of representation agreement do not sustain jurisdiction); Concrete Detailing Servs., Inc. v. Thomsson Steel Co., Inc., 411 F. Supp. 1021, 1023 (S.D.N.Y. 1976) (one visit to New York by an officer of the defendant to discuss the general course of performance of a contract is not enough to assert jurisdiction); PaineWebber, Inc. v. Westgate Group, Inc., 748 F. Supp. 115, 119-120 (S.D.N.Y. 1990) (meeting in New York to modify purchase agreement does not create jurisdiction)).

The record thus far shows that Defendant: (1) met with Plaintiff in New York City on at least one occasion to convince him to enter into a loan agreement; (2) met with Plaintiff on at least one occasion at Plaintiff's home in Port Washington, New York for the same purpose; (3) may have maintained an office in New York for purposes of securing financing; (4) was attempting to secure financing so that he could open a show on Broadway, meaning that New York was the "center of gravity" of the transaction; (5) maintained a bank account at a branch of J.P. Morgan Chase located in New York; and (6) placed calls and sent e-mails to Plaintiff in New York after Plaintiff wired the money. Based on

the Court's weighing of these factors for the purposes of this motion, it appears that Defendant purposefully availed himself to the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws and making him subject to this Court's personal jurisdiction.

Accordingly, the Court DENIES Defendant's motion to dismiss pursuant to Rule 12(b)(2) based on lack of personal jurisdiction.

## II.   Motion to Dismiss for Improper Venue: Rule 12(b)(3)

### A.   Rule 12(b)(3) Standard

Rule 12(b)(3) allows a defendant to move to dismiss a claim based on "improper venue."  When considering a motion to dismiss for improper venue, the Court must accept the facts alleged in the Complaint as true and draw all reasonable inferences in favor of the non-moving party.  Cartier v. Micha, Inc., No. 06-CV-4699, 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007).  In ruling on the motion, however, the Court may rely on facts and consider documents outside the Complaint.  See id.  Further, Plaintiff bears the burden of proving that venue is proper.  See id.

In deciding a motion to dismiss pursuant to Rule 12(b)(3), the Court must first determine whether the case was brought in the proper venue.  In a diversity case, the question of whether venue is proper is governed by 28 U.S.C. § 1391(a), which provides in pertinent part:

[a] civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a) (2000).

B.    Rule (12)(b)(3) Application

Plaintiff argues that 28 U.S.C. § 1391(a)(2) applies to this case because a "substantial part" of the events giving rise to the claim occurred in the Eastern District of New York. According to the Complaint and other documents submitted therewith, Defendant and Plaintiff partially negotiated the Contract in the Eastern District of New York, the money owed to Plaintiff was made payable in the Eastern District of New York, and the damages sustained by Plaintiff were in the Eastern District of New York. In addition, Defendant made phone calls to Plaintiff in New York to negotiate the Contract and, after Plaintiff wired the money, sent e-mails to Plaintiff in New York to continue negotiations on the repayment of the Contract.

Defendant does not seriously dispute these allegations. Defendant does not dispute that any alleged nonpayment must have

12

occurred in New York, where Plaintiff resided, nor does Defendant dispute that Plaintiff negotiated the Contract while in New York. Instead, Defendant seems to argue that more than one venue is proper in this case. The fact that an action may be properly brought in more than one venue, however, does not render Plaintiff's choice improper. Indeed, Section 1391(a)(2) represents "Congress' intent that venue may be proper in more than one federal district in a given case." Sacody Techs., Inc. v. Avant, Inc., 862 F. Supp. 1152, 1157 (S.D.N.Y. 1994) (citing Bates v. C&S Adjusters, Inc., 980 F.2d 865, 868 (2d Cir. 1992)).

An action satisfies the requirements of Section 1391(a)(2) if a communication was "transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action." Sacody Techs., 862 F. Supp. at 1157; see also U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 241 F.3d 135, 153-54 (2d Cir. 2001). Here, it is undisputed that the parties negotiated the Contract while in New York, and this action centers on such sale and delivery. The Court therefore finds that Plaintiff has alleged facts sufficient to ground venue in this Court under 28 U.S.C § 1391(a)(2).

Accordingly, the Court DENIES Defendant's motion to dismiss pursuant to Rule 12(b)(3) based on improper venue.

III. Motion to Dismiss Based on Forum Non Conveniens

The central purpose of the common-law doctrine of <u>forum</u> <u>non</u> <u>conveniens</u> is to "'ensure that the trial is convenient.'" <u>Cyberscan Tech., Inc. v. Sema Ltd.</u>, No. 06-CV-526, 2006 WL 3690651, at *7 (S.D.N.Y. Dec. 13, 2006) (quoting <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 256, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)). This doctrine, however, has been significantly limited from its common-law application: "<u>forum</u> <u>non</u> <u>conveniens</u> 'has continuing application [in federal courts] only in cases where the alternative forum is abroad' and perhaps in rare instances where a state or territorial court serves litigation convenience best." <u>Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.</u>, 549 U.S. 422, 430, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007) (quoting <u>Am. Dredging Co. v. Miller</u>, 510 U.S. 443, 449 n.2, 114 S. Ct. 981, 127 L. Ed. 2d 285 (1994) (alteration in original)). In a non-foreign context, the doctrine has been replaced by the transfer of venue statute. <u>See</u> 28 U.S.C. § 1404(a) (2000); <u>Sinochem</u>, 549 U.S. at 430; <u>see also</u> <u>Hyatt Int'l Corp. v. Coco</u>, 302 F.3d 707, 718-19 (7th Cir. 2002).

In the instant case, both parties reside, and the dispute revolves around events taking place, in the United States. Thus, the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u> is inapplicable. Accordingly, the Court DENIES Defendant's motion to dismiss based on the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>.

IV.  Transfer Pursuant to 28 U.S.C. § 1404(a)

   A.  28 U.S.C. § 1404(a) Standard

        In a motion to transfer pursuant to 28 U.S.C. § 1404(a), the movant bears the burden of establishing, by clear and convincing evidence, that a transfer is appropriate, and that the motion should be granted.  Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 327 (E.D.N.Y. 2006).  Further, the movant must support its motion with a detailed factual affidavit.  See id.  Lastly, deference must be given to the plaintiff's choice of forum and "transfer should be ordered only if the balance of conveniences weighs strongly in favor of the change of forum." Kroll v. Lieberman, 244 F. Supp. 2d 100, 102-03 (E.D.N.Y. 2003).

   B.  28 U.S.C. § 1404(a) Application

        Defendant, in the alternative to dismissal on the grounds of forum non conveniens, seeks to have this action transferred to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) states that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  See 28 U.S.C. § 1404(a).  The goal of Section 1404(a) "is to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van

15

_Dusen v. Barrack_, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d

945 (1964) (quoting _Cont'l Grain Co. v. Barge FBL-585_, 364 U.S. 19,

26-27, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960)) (internal quotation

marks omitted).

     To grant a transfer pursuant to 28 U.S.C. § 1404(a), the

Court engages in a two-pronged inquiry.  First, the Court must

determine whether the action sought to be transferred is one that

"might have been brought" in the district court in which the movant

seeks to have the case litigated.  _Frasca v. Yaw_, 787 F. Supp. 327,

330 (E.D.N.Y. 1992); _Kroll v. Lieberman_, 244 F. Supp. 2d 100, 102

(E.D.N.Y. 2003).  "If the proposed venue is proper, the court then

considers whether transfer will serve the convenience of witnesses

and parties and is in the interests of justice."  _Kroll_, 244 F.

Supp. 2d at 102.

### 1.    First Prong: Whether Venue is Proper in the Southern District of Florida

     Under 28 U.S.C. §1391(a)(1), a venue is proper in a

"judicial district where any defendant resides."  Here, Defendant

is a resident living within the Southern District of Florida.  _See_

28 U.S.C. § 1391(c).  Therefore, Defendant's motion to transfer to

the Southern District of Florida satisfies the first prong of the

transfer inquiry.

## 2. Second Prong: Interests of Justice

The Court must next determine whether the transfer of venue would serve the "convenience of witnesses and parties" and is in the "interests of justice." When analyzing the second prong, the Court examines several factors, including the (1) convenience of the parties; (2) convenience of witnesses; (3) relative means of the parties; (4) locus of operative facts and relative ease of access to sources of proof; (5) attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and (10) how best to serve the interest of justice, based on an assessment of the totality of material circumstances. See Neil Bros., 425 F. Supp. 2d at 327-28.

While the location of the parties and evidence are major factors to be considered, generally a Court will not disturb the Plaintiff's choice of forum unless the balance of the factors weighs strongly in favor of granting the transfer. See Kroll, 244 F. Supp. 2d at 102-03; Frasca, 787 F. Supp. at 331. None of these factors are singly dispositive, but rather the Court must weigh all of the factors in its discretion. Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000); see also Frasca, 787 F. Supp. at 330.

In this case, the Court finds that the factors weigh in favor of denying a transfer. Defendant has failed to provide the Court with any evidence regarding the factors outlined above. Thus, he has not proven to this Court that it would be any more convenient for the parties and witnesses to litigate in Florida. The Court limits its discussion below to the factors about which it already has evidence.

a.  <u>Convenience of Witnesses and Parties</u>

The convenience of the party and non-party witnesses is generally "the single-most important factor in the analysis of whether a transfer should be granted." <u>Id.</u>  "Because of the importance of this factor, the party seeking transfer 'must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.'" <u>Neil Bros.</u>, 425 F. Supp. 2d at 329 (quoting <u>Royal & Sunalliance v. British Airways</u>, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001)).  The Court should not "merely tally" the number of witnesses, but rather must "qualitatively evaluate the materiality of the testimony that the witnesses may provide." <u>Neil Bros.</u>, 425 F. Supp. 2d at 329 (internal quotation marks omitted).

In addition, the parties' residences are to be considered in a motion to transfer. Plaintiff is a resident of New York. Defendant is a resident of Florida. A transfer from the Eastern

District of New York to the Southern District of Florida would simply shift the inconvenience from Defendant to Plaintiff. <u>See</u> <u>Merkur v. Wyndham Int'l, Inc.</u>, No. 00-CV-5843, 2001 WL 477268, at *4 (E.D.N.Y. Mar. 30, 2001) ("A transfer should not merely shift the burden of inconvenience from one party to the other.").

Defendant fails to identify a single potential witness in his motion to transfer for whom it would be more convenient to testify in Florida. Similarly, Defendant has failed to identify any other evidence that would be more easily available to the District Court in the Southern District of Florida. Finally, consideration of the parties' residences dictates against transfer. Thus, the Court finds that Defendant has not satisfied his burden establishing that this case should be transferred based on convenience of the witnesses and the parties.

b. <u>Locus of Operative Facts and Relative Ease of Access to Sources of Proof</u>

Neither party argues that New York is the locus of operative facts. The show that Defendant sought to produce was to take place on Broadway. Defendant came to New York on at least one occasion to negotiate the terms of the Contract. When wiring the money, Plaintiff transferred the money from New York to another New York bank account, and Plaintiff was to receive repayment in New York. Finally, Defendant made further contact with Plaintiff by phone and e-mail while Plaintiff was in New York. Consequently,

this factor does not weigh in favor of transfer.


### c.    Weight Accorded Plaintiff's Choice of Forum

A plaintiff's choice of forum is typically entitled to "great weight." Frasca, 787 F. Supp. at 332. Indeed, Plaintiff's choice of forum "should not be disturbed unless the balance of the factors tips heavily in favor of a transfer." Merkur, 2001 WL 477268, at *3 (quoting S-Fer Int'l, Inc. v. Paladion Partners, Ltd., 906 F. Supp. 211, 213 (S.D.N.Y. 1995)). In other words, Courts should not disturb Plaintiff's choice of forum to shift the inconvenience from one party to the other. See Kroll, 244 F. Supp. 2d at 103.

As stated above, Plaintiff is a New York resident. Plaintiff alleges that he negotiated the Contract in New York and that he sustained money damages here, all of which Defendant concedes is true. Accordingly, the Court finds that this factor dictates against a transfer.

For the foregoing reasons, the Court DENIES Defendant's motion to transfer this case to the United States District Court for the Southern District of Florida.

### V.    Motion to Dismiss Pursuant to Rule 12(b)(6)

### A.    Rule 12(b)(6) Standard

On a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must satisfy a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). The Complaint "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 1965 (2007). To be clear, on a motion to dismiss, the Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." Id. at 1974.

In applying this standard, the district court must accept the factual allegations set forth in the Complaint as true and draw all reasonable inferences in favor of Plaintiff. See Cleveland v. Caplaw Enter., 448 F.3d 518, 521 (2d Cir. 2006); Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005).

In deciding a 12(b)(6) motion, the Court is confined to "the allegations contained within the four corners of the complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). Additionally, the Court may examine "any written instrument attached to [the complaint] or any statements or documents incorporated in it by reference" as well as any document on which the complaint relies heavily. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002). "Of course, it may

also consider matter of which judicial notice may be taken under Fed. R. Evid. 201." <u>Kramer v. Time Warner, Inc.</u>, 837 F.2d 767,773 (2d Cir. 1991). Consideration of materials beyond those just enumerated requires conversion of the 12(b)(6) motion to dismiss to one for summary judgment under Rule 56. See <u>id.</u>

B. <u>Rule 12(b)(6) Application</u>

In this case, Defendant argues that Plaintiff has not sufficiently established that there was an enforceable contract at all, and in the alternative, maintains that if there was a contract, it was between Plaintiff and Harmony, LLC, not Plaintiff and Defendant. Generally, to create a binding contract, the parties must manifest their mutual assent sufficiently to assure that they are truly in agreement with respect to all material terms. See <u>Chernis v. Swarzman</u>, No. 05-CV-3377, 2007 U.S. Dist. LEXIS 56582, 24-25 (S.D.N.Y. Aug. 2, 2007) (citing <u>Express Indus. & Terminal Corp. v. N.Y. Dep't of Transp.</u>, 93 N.Y.2d 584, 589, 715 N.E.2d 1050, 693 N.Y.S.2d 857 (1999)). "'If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract.'" <u>Id.</u> at 25 (quoting <u>Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.</u>, 74 N.Y.2d 475, 482, 548 N.E.2d 203, 548 N.Y.S.2d 920 (1989)). As the New York State Court of Appeals emphasized in <u>Express Industries</u>, "'definiteness as to material matters is of the very essence of contract law. Impenetrable vagueness and uncertainty will not do'" 93 N.Y.2d

584, 590 (quoting <u>Martin Delicatessen v. Schumacher</u>, 52 N.Y.2d 105, 417 N.E.2d 541, 436 N.Y.S.2d 247 (1981)).  On the other hand, not all terms of a contract must be fixed with absolute certainty for a binding contract to exist.  <u>See</u> <u>id.</u>  Although "there must be a manifestation of mutual assent to essential terms, parties also should be held to their promises and courts should not be 'pedantic or meticulous' in interpreting contract expressions" <u>Id.</u> (quoting <u>Cobble Hill Nursing Home</u>, 74 N.Y.2d at 483).

To determine whether there was an objective meeting of the minds sufficient to give rise to a binding and enforceable contract, courts generally look to the basic elements of offer and acceptance.  In his motion, Defendant denies that there ever was an offer and acceptance.  In essence, Defendant expects the Court to ignore the fact that Plaintiff wired him $100,000, and Defendant kept and used it: as a general rule, "intent to accept an offer may not be inferred from silence, [but] a party's silence will be deemed an acquiescence where he or she is under . . . a duty to speak . . . ." <u>Russell v. Raynes Assocs., LP</u>, 569 N.Y.S.2d 409, 414 (App. Div. 1991).  Such a duty arises when "conduct, accompanied by silence, would be deceptive and beguiling[,]" <u>Brennan v Nat'l Equit. Inv. Co.</u>, 247 N.Y. 486, 490, 160 N.E. 924, 1928 N.Y. LEXIS 1098 (1928), or failure to speak would mislead the other party.  <u>See</u> <u>Josephine & Anthony Corp. v. Horwitz</u>, 396 N.Y.S.2d 53, 54 (App. Div. 1977).

But even assuming that no such offer and acceptance occurred orally, the e-mails provided in Plaintiff's opposition to Defendant's motion clearly show written offer and acceptance. In an e-mail dated October 27, 2003, Plaintiff wrote to Defendant:

> A few weeks back when you were in a cash crunch, I helped you with a $100,000 personal loan that you guaranteed with your home as collateral. [Y]ou said nancy was working on the paragraph or document that you would provide describing the guarantee and the 10% interest . . . . if people like myself have helped you when you've been in some cash crunch situations, it's not right that I have to ask on a few occasions for you to provide what you said you would. Some people would not have sent you the money without your written guarantee, I did.

(Pl.'s Opp'n to Mot. to Dismiss, Ex. B).

In his reply on the same day, Defendant wrote: "I agree with you corey, and called you this morning, left a message at yor [sic] home and on your cell, I'll take care of it, promise and sorry you have been great! And you have my word, which is most important." Id. This communication, taken together with the facts alleged in the Complaint, establishes sufficient facts to withstand Defendant's motion to dismiss. For purposes of this motion to dismiss, Plaintiff sufficiently established that (1) there was a loan agreement between Plaintiff and Defendant; (2) there were, albeit somewhat vague, repayment terms; (3) Plaintiff performed his end of the bargain by wiring the money; and (4) Defendant has not performed under the contract and has failed to make his payments.

For the foregoing reasons, Defendant's motion to dismiss pursuant to Rule 12(b)(6) is DENIED.

VI.  <u>Motion to Dismiss Pursuant to the Statute of Frauds:</u>
     <u>N.Y. Gen. Oblig. Law § 5-701(a)</u>

In this case, Defendant argues that the Contract violates
the New York Statute of Frauds, and is therefore unenforceable,
because it could not be performed in one year and because it is a
contract that would require him to answer for the debts of another,
namely his former employer, Harmony, LLC.  These arguments ignore
long-established New York state law.

The New York Statute of Frauds provides, in relevant
part, that a contract is void, unless it is in writing, "if such
agreement, promise or undertaking: (1) [b]y its terms is not to be
performed within one year from the making thereof . . . ; [or] (2)
[i]s a special promise to answer for the debt, default or
miscarriage of another person . . . ."  N.Y. Gen. Oblig. Law
§ 5-701(a) (McKinney 2008).  However, a "contract that is "capable"
of being performed within one year of its making is outside the
statute."  <u>Zaitsev v. Salomon Bros.</u>, 60 F.3d 1001, 1003 (2d Cir.
N.Y. 1995) (<u>citing</u> <u>North Shore Bottling Co. v. C. Schmidt and Sons,
Inc.</u>, 22 N.Y.2d 171, 176, 292 N.Y.S.2d 86, 89, 239 N.E.2d 189
(1968)).

Oral agreements do not run afoul of § 5-701(a), however,
so long as, according to the parties' terms, "there might be any
possible means of performance within one year.  Wherever an
agreement has been found to be susceptible of fulfillment within

26

that time, in whatever manner and however impractical, . . . [courts have] held the one-year provision of the Statute to be inapplicable, a writing unnecessary, and the agreement not barred." D&N Boening, Inc. v. Kirsch Beverages, Inc., 63 N.Y.2d 449, 455-56, 472 N.E.2d 992, 483 N.Y.S.2d 164 (1984); see Freedman v Chem. Constr. Co., 43 N.Y.2d 260, 265, 372 N.E.2d 12, 401 N.Y.S.2d 176 (1977) (holding § 5-701(a)(1) did not bar an oral agreement where no provision in the agreement directly or indirectly regulated the time for performance, despite the extreme unlikelihood of its completion within one year). On the other hand, § 5-701(a)(1) bars oral agreements which by their own terms, cannot be performed within one year. D&N Boening, Inc, 63 N.Y.2d at 456; see, e.g., Polykoff Adv. v. Houbigant, Inc., 43 N.Y.2d 921, 374 N.E.2d 625, 403 N.Y.S.2d 732, 733 (1978) (holding that the oral contract was within the statute of frauds because, by its terms, it was (1) not to be performed within one year from the making thereof, (2) not a contract involving alternative performances, one of which could be fully performable within a year, and (3) terminable within a year without breach).

Here, Plaintiff alleges that the parties entered into the Contract during the summer of 2003, and Plaintiff performed his end of the bargain by wiring the $100,000 to Defendant on or about October 3, 2003. Although there is no evidence as to the term of repayment, it is conceivable that Defendant could have discharged

27

his obligation of repayment within one year of contract formation; thus, the Contract does not fall within the Statute of Frauds and Defendant's motion to dismiss pursuant to § 5-701(a)(1) is DENIED. As to § 5-701(a)(2), Defendant argues that the Contract was actually between the Plaintiff and Harmony, LLC; therefore, Defendant states, any promise of repayment Defendant made needed to be in writing because such agreement would require him to answer for the debts of Harmony, LLC. As stated earlier, however, Plaintiff has sufficiently established for purposes of this motion that the Contract was between Plaintiff and Defendant. Accordingly, Defendant is not answering for Harmony, LLC's debt and, the Contract is not within the Statute of Frauds.

Finally, even if the Contract does fall within the Statute of Frauds, the writing requirement may be satisfied by the e-mails exchanged by the parties; for purposes of this motion, however, the Court need not decide this issue.

<u>CONCLUSION</u>

For the reasons discussed above, the motion to dismiss is DENIED in its entirety, and the motion to transfer based on 28 U.S.C. § 1404(a) is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT

Dated: Central Islip, New York        Joanna Seybert, U.S.D.J.
       March  12 , 2009